Beckie Wylie EAST, Appellant,

v.

The STATE of Texas, State.

Jerry Lue TRUSSELL, Jr., Appellant,

v.

The STATE of Texas, State.

Nos. 2–85–181–CR, 2–85–182–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 26, 1986.

Rehearing Denied Jan. 14, 1987.

Allan K. Butcher, Fort Worth, Dick Turner, Cleburne, for appellants.

Dan B. Grissom, Dist. Atty., and Andrew Ottaway, Asst. Dist. Atty., Granbury, for the State.

Before FENDER, C.J., and BURDOCK and HILL, JJ.

OPINION

HILL, Justice.

Beckie Wylie East and Jerry Lue Trussell, Jr. each appeal from their respective convictions for the offense of manufacturing amphetamine over 400 grams. *See* TEX.REV.CIV.STAT.ANN. art. 4476–15, sec. 4.031(a) (Vernon Supp.1986). The two were tried jointly before the jury, which found them guilty and assessed punishment for both at 60 years confinement in the Texas Department of Corrections. Both present the same point of error, urging that the evidence is insufficient to support the conviction.

We affirm, because we find that the evidence is sufficient to support the conviction.

■ In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on reh'g). A conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. *Jackson v. Virginia,* 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 572–73 (1979). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Jackson,* 672 S.W.2d at 803.

■ The evidence reflects that at approximately 12:05 a.m. on February 15, 1985, officers executing a search warrant forcibly entered a mobile home located in Hood County. Inside the mobile home, the

officers found an amphetamine lab and associated equipment located in the bathroom and the spare bedroom of the home. The lab was not operating at the time of the officers' entry. East and Trussell had apparently been in the master bedroom. Quantities of amphetamine were found in containers located in three places in the master bedroom—in a closet, on a ledge, and in a chest of drawers. Prior to entry, the officers had detected the strong smell of a clandestine laboratory coming from the mobile home. Trussell and East did not flee or make any furtive moves at the time of the raid. They were characterized as being cooperative. There was evidence, not objected to, that a confidential informant had advised the police that Trussell and East had been at the mobile home the day before.

The owner of the mobile home testified that East had rented the home from him on June 1, 1984. He did not know how long Trussell had lived there, but he indicated that he had been there in the fall of 1984, that he had continued to reside there in 1985, and that he had frequently paid the rent himself. He said that East and Trussell were behind on their rent at the time of the raid, but that he had not initiated any eviction procedures. He had discussed their being behind on the rent with them. He related that he had initiated eviction procedures after their arrest and that they did not get all their belongings out until the end of February. He was not aware of their moving anything out prior to their arrest.

East and Trussell did not testify at the guilt or innocence stage of the trial. East's first cousin, Gary "Buzzy" Dale Mann, who was under indictment for aggravated manufacture and aggravated possession of amphetamine at the time of trial, took full responsibility for the lab. He said that he set it up, used it to manufacture amphetamine, then left. He said that he was not worried because he did not think that Trussell and East would turn him into the police if they discovered the lab. He said that East gave him permission to move in, but that he did not tell her that he was moving in a lab. He testified that he was not aware of any involvement of East or Trussell with the lab. Mann acknowledged the fact that he had been previously convicted of two felony convictions and that he knew he was facing a long prison sentence. He said that it would not bother him to lie either to the police or to the jury.

East's father testified that she had been sick and the water was off at the mobile home so that she had been staying with her family. He said that she stayed with them from three to five nights of the week before the raid. He was unsure as to particular days of the week, but he did testify that she had stayed with them on the 12th and 13th of February. Police testimony verified that the water was off at the time of the raid.

The State presented evidence which showed East and Trussell to have custody and control of premises containing a lab which was capable of manufacturing amphetamine and which had manufactured sufficient amphetamine to support conviction for the offense alleged, and the evidence further showed East and Trussell to be present at such premises on the occasion in question. We find this evidence sufficient to support the conviction. *See Wilde v. State*, 105 Tex.Cr.R. 529, 289 S.W. 52 (1926); *Richey v. State*, 97 Tex.Cr.R. 447, 261 S.W. 777 (1924). We rely on these older cases, both of which involve convictions for the unlawful manufacture of intoxicating liquors, for the reason that they are more factually similar to the case at bar than the cases relied on by either the State or by East and Trussell.

East Trussell list eleven "affirmative links" which they assert were not present in this case which, when present, have been held to make the evidence sufficient. We would add a twelfth incriminating factor to the appellants' list: evidence of possession of a drug lab on one's premises combined with evidence that the lab has been used on the premises to manufacture the drug alleged, and in circumstances where the presence of the lab, because of its open location

or odor or both, is shown to have been known to the defendant.

In their eleven "affirmative links" the appellants list as number one a requirement that the defendant have sole access to the premises where the contraband or criminal instrument was found. They rely on the testimony of East's cousin and on the cases of *Rhyne v. State,* 620 S.W.2d 599 (Tex.Crim.App.1981) and *Meyers v. State,* 665 S.W.2d 590 (Tex.App.—Corpus Christi 1984, pet. ref'd), to show that since East and Trussell did not have sole access to the premises, the evidence must be insufficient. Both of those cases are distinguishable from the case at bar in that both cases were possession cases in which the evidence was held to be insufficient, despite the fact that primary control of the premises was in the defendant, where others had access to the premises and where the drug was not in plain view. In the case at bar the lab and equipment and the odor associated with it were very much in open view and "open smell." We note that none of the "affirmative links" listed by the appellants were present in the cases upon which we rely.

Next, appellants assert that their proximity to the lab is insufficient by itself to support their conviction. They cite the cases of *Oaks v. State,* 642 S.W.2d 174 (Tex.Crim.App.1982); *Hernandez v. State,* 517 S.W.2d 782 (Tex.Crim.App.1975) and *Hausman v. State,* 480 S.W.2d 721 (Tex. Crim.App.1972). The appellants' reliance on these cases is also misplaced since they are possession cases in which the narcotics were not in plain view. Also, in none of those cases was the defendant shown to be in control of the premises where the drugs were found. In the case at bar the appellants were shown to be in possession and control of the premises where the lab was located and the lab itself was in open view and "open smell."

The appellants place great reliance on the case of *Chapin v. State,* 671 S.W.2d 608 (Tex.App.—Houston [1st Dist.] 1984, no pet.). In *Chapin* there was no showing of any control over the premises by the defendant. In the case at bar the evidence showed that East and Trussell were jointly renting the premises from the owner.

Appellants appear to contend that the evidence does not show that they were in control of the premises, relying on the testimony of East's father and cousin, Mann, to establish that she had relinquished control of the premises to Mann. Her father's estimate of the number of days that East had stayed with her family ranged from three to five days the week before her arrest. His testimony did not rule out that East and Trussell continued to control the premises. Her presence there with Trussell was evidence of their continuing control. East's cousin, Mann, did not have anything to lose by adding this offense to his long list of felonies. He admitted that it would not bother him at all to lie to a jury. We think that under the facts of this case the credibility of this testimony from interested witnesses was a matter for the jury to consider in its deliberations. Having found that the evidence was sufficient to support the conviction, we overrule the appellants' sole point of error.

The judgments of conviction of East and Trussell are affirmed.